# United States District Court

### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| MUCIO RAMIREZ | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:20-CV-1927-S |
| | § | |
| CHRISTOPHER MARTIN | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This Order addresses Defendant Christopher Martin's Motion for Summary Judgment [ECF No. 14] ("Motion"), wherein Officer Christopher Martin ("Defendant") moves for summary judgment based on qualified immunity. Having reviewed the Motion, Defendant Christopher Martin's Brief in Support of His Motion for Summary Judgment ("Defendant's Brief") [ECF No. 15], Defendant's Appendix in Support of His Motion for Summary Judgment [ECF No. 16], Plaintiff's Response to Defendant Christopher Martin's Motion for Summary Judgment [ECF No. 19], Plaintiff's Brief in Support of His Response to Defendant Christopher Martin's Motion for Summary Judgment ("Response Brief") [ECF No. 20], Plaintiff's Appendix for Plaintiff's Response to Motion for Summary Judgment [ECF No. 21], Defendant Christopher Martin's Reply in Support of His Motion for Summary Judgment [ECF No. 23], and the applicable authority, the Court **GRANTS** the Motion.[1]

## I.     BACKGROUND FACTS

Plaintiff Mucio Ramirez ("Plaintiff") filed this civil action pursuant to 42 U.S.C. § 1983 alleging Defendant used excessive force in connection with an arrest on April 14, 2019. While on patrol that evening, City of Garland Police Officer Brad Hanks ("Officer Hanks") pulled up behind Plaintiff's car at a red light. After observing Plaintiff swerving and driving with his taillights

---

[1] The parties have provided the Court with videotapes taken by police body-cameras and dash-mounted cameras on patrol cars as well as affidavits.

turned off, Officer Hanks attempted to initiate a traffic stop by activating his patrol car's emergency lights, siren, and horn. When Plaintiff failed to stop, Officer Hanks called dispatch and notified them that he was in a "felony pursuit of a car." *See* Aff. of Officer Hanks [ECF No. 16, Ex. B] ¶ 2; Ex. 5 to Aff. of Madeline Swortwood [ECF No. 16 at 109] (Officer Hanks Dash-Camera Video).

Defendant was dispatched to the ongoing pursuit. While en route, his patrol car's radio announced that Plaintiff was exceeding the speed limit and had not yet stopped. By the time Defendant arrived, the chase had ended and Plaintiff had been pulled over. Defendant turned into the street where Plaintiff's car was stopped and relayed over the radio that he was approaching the "felony traffic stop." *See* Ex. 1. to Def. Aff. [ECF No. 16 at 10] (Defendant Dash-Camera Video); *id.* (Defendant Body-Camera Video).

Plaintiff was seated in his car, which was parked next to a sidewalk on an unlit residential street. Several officers were positioned by patrol cars behind Plaintiff and had their service weapons drawn. *See* Ex. 5 to Swortwood Aff. [ECF No. 16 at 109] (Officer Hanks Body-Camera Video); Def. Body-Camera Video. After stepping out of his patrol car, Defendant observed Officer Hanks command Plaintiff to put "both hands out of the window." Subsequently, Plaintiff exited the car and turned towards the officers. *See id.*; Def. Dash-Camera Video; Def. Aff. [ECF No. 16, Ex. A] ¶ 5. Officer Hanks immediately ordered Plaintiff to turn away from the officers and "slowly walk back." Plaintiff stumbled as he walked backwards until he reached the end of his car. Officer Hanks then ordered him to "drop to [his] knees." Plaintiff did not heed the command initially but complied after it was repeated a second time. Once on his knees, Plaintiff was ordered by Officer Hanks to "crawl backwards." Plaintiff stood up, did not follow orders to "get back down on [his] knees," turned his head towards the officers, and walked backwards. *See* Def. Body-Camera

Video. Defendant claims he feared that Plaintiff was looking back to acquire a target by identifying the position of the officers and therefore began to draw his weapon. *See* Def. App. ¶ 6; Def. Dash-Camera Video. Defendant re-holstered his weapon when Plaintiff dropped back down to his knees in response to repeated commands from Officer Natausha Swavey ("Officer Swavey") and Officer Hanks. *See id.*; Def. Body-Camera Video.

While Plaintiff was on his knees with his arms lowered, he intermittently looked back at the officers. Thereafter, Defendant and Officer Swavey walked towards Plaintiff from behind in order for each to grab an arm and take him into physical custody while other officers went to "clear the car." *See* Def. Body-Camera Video; Def. Aff. ¶ 5; Aff. of Officer Swavey [ECF No. 16, Ex. C] ¶ 4; Pl. Ex. C [ECF No. 21 at 9] (Officer Sprong Body-Camera Video). As they were standing behind Plaintiff—Officer Swavey on the left and Defendant on the right—Officer Swavey paused to holster her weapon. *See* Officer Swavey Aff. ¶ 5; Def. Dash-Camera Video. At that moment, Defendant grabbed Plaintiff's right arm and immediately took him to the ground. Plaintiff's body fell forward and his head struck the ground causing a cut over his right eyebrow. *See* Def. Body-Camera Video; Officer Sprong Body-Camera Video; Ex. 2 to Swortwood Aff. [ECF No. 16 at 55-92] (Defendant's Medical Records). Plaintiff was then handcuffed by Defendant and placed under arrest. *See* Def. Body-Camera Video; Def. Aff. ¶ 10.

Following the arrest, Plaintiff was taken to the hospital by ambulance and had his blood drawn. *See* Swortwood Aff. ¶ 4; Ex. 3 to Swortwood Aff. [ECF No. 16 at 95] (Police Report). The toxicology report indicated that Plaintiff's blood alcohol content ("BAC") was 0.205 g/dL. *See* Ex. 4 to Swortwood Aff. [ECF No. 16 at 97] (Toxicology Laboratory Report).

## II.       LEGAL STANDARD

### A.       *Summary Judgment*

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party bears the burden of showing that summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets his burden by informing the Court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Id.*; FED. R. CIV. P. 56.

When reviewing the evidence on a motion for summary judgment, the Court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The Court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Id.* at 250.

### B.       *Qualified Immunity*

Under 42 U.S.C. § 1983, private citizens may sue public officials for violations of their federal statutory or constitutional rights. *See Monroe v. Pape*, 365 U.S. 167, 171 (1961). But public officials are shielded from civil liability under § 1983 by the doctrine of qualified immunity "so long as their conduct 'does not violate clearly established statutory or constitutional rights of

4

which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015).  This "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 5 (2013) (internal quotation marks omitted).

The qualified immunity defense has two prongs: whether an official's conduct violated a statutory or constitutional right of the plaintiff; and whether the right was "clearly established" at the time of the violation. *See Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009).  "A court may rest its analysis on either prong." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (citing *Morgan v. Swanson*, 659 F.3d 359, 385 (5th Cir. 2011) (en banc)); *see also Pearson*, 555 U.S. at 236.

An officer's invocation of qualified immunity "alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010); *see also Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007).  Once the movant asserts this affirmative defense, the burden shifts to the plaintiff to rebut it. *Id.*  The plaintiff must "rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Dep't of Protective and Regul. Servs.*, 537 F.3d 404, 419 (5th Cir. 2008).

### III.      ANALYSIS

#### A.      *Constitutional Violation*

The Fourth Amendment confers the right to be free from unreasonable searches and seizures, U.S. CONST. amend. IV, and a seizure is unreasonable if it involves excessive force, *Graham v. Connor*, 490 U.S. 386, 394-95 (1989).  To state a Fourth Amendment excessive force claim under § 1983, a plaintiff must demonstrate "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly

unreasonable." *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016). Because "inquiries regarding whether a use of force was 'clearly excessive' or 'clearly unreasonable . . . are often intertwined,'" courts may consider those questions together. *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (quoting *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012)). Additionally, an injury is "generally legally cognizable when it results from a degree of force that is constitutionally impermissible—that is, objectively unreasonable under the circumstances." *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008). The issue, therefore, is whether the use of force was reasonable.

The Court must determine the reasonableness of the use of force "from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. This inquiry "requires careful attention to the facts and circumstances of each particular case, including [(1)] the severity of the crime at issue, [(2)] whether the suspect poses an immediate threat to the safety of the officers or others, and [(3)] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396; *see also Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) ("Excessive force claims are necessarily fact-intensive."). The Court must determine whether the totality of the circumstances justified the particular use of force. *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008). The ultimate inquiry is whether the force used was reasonable "under the facts as a reasonable officer *would perceive them*." *Griggs v. Brewer*, 841 F.3d 308, 313 (5th Cir. 2016) (emphasis in original).

Applying the *Graham* factors, the Court finds that Defendant's conduct was not objectively unreasonable under the circumstances. With respect to the severity of the crime at issue, Defendant

was pulled over for a felony traffic stop, and his crimes—driving while intoxicated[2] and evading arrest with a vehicle—were serious. *See Cooper*, 844 F.3d at 522 ("DUI is a serious offense."); *Ouedraogo v. Garland*, 844 F. App'x 756, 757-58 (5th Cir. 2021) (finding that evading arrest or detention with a vehicle is a "particularly serious crime").

As to whether a reasonable officer would have perceived Plaintiff as an immediate threat, this "second factor is the most important." *Malbrough v. Stelly*, 814 F. App'x 798, 803 (5th Cir. 2020). Plaintiff committed a "purposeful, violent, and aggressive" crime by leading officers on a vehicular pursuit to evade arrest. *See U.S. v. Harrimon*, 568 F.3d 531, 534 (5th Cir. 2009). Additionally, at the time Defendant grabbed Plaintiff's arm and took him to the ground, Plaintiff had not been searched. He was wearing baggy clothing, which may have concealed a weapon. And as he lowered his hands, he looked back at officers in violation of direct commands not to do so. Under these circumstances, the Court finds that it was reasonable for Defendant to perceive Plaintiff as an immediate threat. *See Cooper*, 844 F.3d at 523 n.2 (observing that the threat level increases when a suspect who commits a violent crime has yet to be searched); *Reese v. Anderson*, 926 F.2d 494, 500-01 (5th Cir. 1991) (finding it reasonable for an officer to believe that a suspect who repeatedly lowered his hands was trying to retrieve a gun). Although Plaintiff was unarmed, Defendant's mistaken belief that Plaintiff may have been armed does not automatically shift this factor in favor of Plaintiff. A reasonable officer could have feared that Plaintiff was armed.[3] *See Saucier*, 533 U.S. at 206; *Carnaby v. City of Houston*, 636 F.3d 183, 188 n.4 (5th Cir. 2011). "The Fourth Amendment does not require police officers to wait until a suspect shoots to confirm that a serious threat of harm exists." *Ramirez*, 542 F.3d at 130.

---

[2] Plaintiff's BAC of 0.205 g/dL was more than double the legal limit, which is .08 g/dL in Texas. *See* Tex. Penal Code § 49.01.

[3] The fact that Plaintiff was surrounded by officers does not impact the analysis because had he retrieved a gun, he still could have caused injury or death despite the officers' presence. *See Reese*, 926 F.2d at 501.

As to the third factor, Defendant concedes that Plaintiff "was no longer fleeing" but maintains that Plaintiff remained noncompliant. Def.'s Br. 11. On this point, the Court notes the videotapes show that while Plaintiff was on his knees, he continued to repeatedly look back at the officers despite previously being ordered not to do so. *See* Def. Body-Camera Video. "When one party's description of the facts is discredited by the record, we need not take his word for it but should view 'the facts in the light depicted by the videotape.'" *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012) (quoting *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)).

Considering the totality of the circumstances and viewing the facts in the light most favorable to Plaintiff, the Court finds that Defendant's action of grabbing Plaintiff's arm and taking him to the ground was not unreasonable. "Fourth Amendment jurisprudence has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion." *Graham*, 490 U.S. at 396. Importantly, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (internal citation and quotation marks omitted); *see also Trammell v. Fruge*, 868 F.3d 332, 343 n.9 (5th Cir. 2017) ("[I]t is reasonable for an officer to attempt to grab a noncompliant suspect's arm in an attempt to handcuff the suspect."). Defendant was faced with an intoxicated individual who had led officers on a vehicular pursuit and had shown an unwillingness to follow officers' orders when pulled over. Moreover, the interaction took place at night on an unlit street and Plaintiff had not yet been searched. Approaching Plaintiff from behind, Defendant was forced to make a split-second decision while Officer Swavey paused to holster her weapon. Though Plaintiff was on his knees at that moment, Defendant's decision to grasp Plaintiff's right arm and take him to the ground in order to secure him was reasonable in proportion to the tense and uncertain

situation. *See Poole*, 691 F.3d at 631 n.6 (recognizing that arrests are "inherently dangerous and can escalate precipitously if the arrestee is not overcome immediately").

## B.   *Clearly Established Right*

Alternatively, Defendant is entitled to summary judgment based on qualified immunity because Plaintiff has not met his "heavy" and "demanding" burden of showing that Defendant's use of force violated a clearly established right. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019); *Mendez v. Poitevent*, 823 F.3d 326, 331 (5th Cir. 2016).

To constitute a violation of a clearly established right, case law must place the constitutional question "beyond debate." *Morrow*, 917 F.3d at 874 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "Pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997) (emphasis omitted); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("[T]he contours of the right [must be] sufficiently clear that a reasonable official would understand that what he is doing violates that right."). "This is not to say that an official is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* (internal citations omitted). A necessary consequence of this is that clearly established law "should not be defined at a high level of generality," but instead "must be particularized to the facts of the case. Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (cleaned up); *see Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) ("The 'clearly established' standard . . . requires that the legal principle prohibit the officer's conduct in the particular circumstances before him. . . . This requires a high

'degree of specificity.'"); *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) ("[E]xisting precedent [must] 'squarely govern[]' the specific facts at issue."); *Morgan*, 659 F.3d at 372 (controlling precedent must define pertinent right "with a high degree of particularity"). "[O]utside of an obvious case, the law is only clearly established if a prior case exists where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *Hanks*, 853 F.3d at 747 (internal quotation marks omitted) (quoting *White*, 137 S Ct. at 552). If, however, officers of "reasonable competence could disagree on [whether the conduct is legal], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Plaintiff points to several cases for the general proposition that it was clearly established that taking a suspect down to the ground when the suspect is not actively resisting arrest constitutes excessive use of force. *See* Resp. Br. 16-21. But those cases are not sufficiently analogous to the facts at issue, and "[i]t is the plaintiff's burden to find a case in his favor that does not define the law at a 'high level of generality.'" *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018). In *Darden v. City of Fort Worth*, the plaintiff was thrown to the ground, tased twice, choked, punched and kicked in the face, pushed into a face-down position, and had his face pressed into the ground and his hands pulled behind his back to be handcuffed. *See* 880 F.3d 722, 725 (5th Cir. 2018). In *Newman*, the plaintiff was struck by a baton "thirteen times in about nine seconds" and was tased multiple times. 703 F.3d at 760. And *Cooper* involved "a lengthy dog attack." 844 F.3d at 523. These cases involved much greater uses of force than the present case. The plaintiffs in *Trammell*, *Hanks*, and *Deville* committed less severe offenses than Plaintiff. In *Trammell*, the officer was arresting plaintiff for public intoxication, "a Class C misdemeanor and thus . . . a minor offense." 868 F.3d at 340. And in both *Hanks* and *Deville*, the plaintiffs were stopped for committing a minor traffic offense. *See* 853 F.3d at 748; 567 F.3d at 167. Finally, in *Bush* the

officer "forcefully slammed [the plaintiff]'s face into a vehicle when [the plaintiff] was handcuffed and subdued." 513 F.3d at 501. Here, Plaintiff was not yet handcuffed or subdued. This distinction is important because an officer cannot reasonably use as much force when the suspect is handcuffed. *See, e.g.*, *Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015) ("[O]nce a suspect has been handcuffed and subdued, and is no longer resisting arrest, an officer's subsequent use of force is excessive.").

In light of the requirement that clearly established law be particularized to the facts at issue and Plaintiff's failure to identify such law, Defendant is entitled to qualified immunity. *See Batyukova v. Doege*, 994 F.3d 717, 729 (5th Cir. 2021) (affirming grant of summary judgment where plaintiff "failed to identify clearly established law").

### IV.     CONCLUSION

Viewing the facts and deciding all reasonable doubts and inferences in the light most favorable to Plaintiff, Defendant Christopher Martin's Motion for Summary Judgment is **GRANTED**.

**SO ORDERED.**

SIGNED December 22, 2021.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**

11